UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,        Case No. 1:23-cr-20049

v.               Honorable Thomas L. Ludington
                United States District Judge
DULANI MOSI DEGRATE,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S TWO MOTIONS TO SUPPRESS**

    Nine months into his eight-year term of supervised release, Defendant Dulani Mosi Degrate was driving on a January evening when he was stopped by Michigan State Police troopers for drifting between lanes. After learning Degrate was on supervised release, the troopers twice asked for his consent to search his car and Degrate twice consented. Accordingly, the troopers searched his car and found 50 grams of cocaine in the engine, evidence that Degrate now seeks to suppress through two separate motions.

    The questions before this Court are (1) whether Degrate has standing to challenge the search; (2) whether the troopers had probable cause to initiate the traffic stop; and (3) whether Degrate's consent was voluntary.

I.

    On January 3, 2023, Michigan State Police Troopers Cameron Rubio and Cameron Curry stopped a Chevrolet Equinox (the "Equinox") in Saginaw, Michigan, after allegedly observing it violate Michigan law by turning left, not proceeding into the closest lane, then straddling two lanes. ECF No. 18 at PageID.45. Rubio approached the driver of the Equinox where Defendant was in the driver seat, and asked him what was "going on" with his driving and Defendant responded,

"what you mean?" *See* Defs.' Resp. Ex. 1, ECF No. 28, 0:32–0:55 [hereinafter "Rubio Cam"]. Rubio explained that he had observed Defendant driving in "two lanes at the same time." *Id.* at 0:56–0:59. Defendant insisted he "didn't see [he] was in no two lanes," but Rubio told Defendant that the alleged offense was "on camera."[1] *Id.* at 0:56–1:03. Defendant handed Rubio his driver's license and Rubio asked if the Equinox was registered to Defendant. *Id.* at 1:03–1:08. Defendant responded that the Equinox was registered under his niece's name. *Id.* Rubio then asked Defendant for the car's registration and proof of insurance. *Id.* at 1:08–1:12.

While searching for proof of insurance, Defendant told Rubio that he recently moved from a halfway house, and Rubio asked Defendant if he was "on paper or anything." *Id.* at 1:12–2:14. Defendant said he was on "parole"[2] and just "came from the feds" for "drugs." *Id.* at 2:13–2:23. Rubio then asked Defendant if he had any open alcohol, drugs, or firearms in the car, which Defendant denied. *Id.* at 2:37–2:41. Rubio then asked, "Your parole conditions, if I asked you to search the car, would you allow me?" *Id.* at 2:41–2:44. Defendant responded by saying, "yeah." *Id.* at 2:44–2:45.

Seconds later, Rubio asked Defendant to "hop on out" of the Equinox, frisked him, and found approximately $1,500 in his pocket. *Id.* at 2:45–4:05. He then asked Defendant to sit on the front of the patrol car, and asked Defendant, "you don't care if I go through [the Equinox]?" *Id.* at 4:06–4:16. Defendant told Rubio to "go through it." *Id.* at 4:16–4:18.

The troopers searched the Equinox and found over 50 grams of cocaine in the engine. ECF

---

[1] The Government submitted footage from both troopers' body cameras, but, importantly, neither record Defendant's driving before he was pulled over.

[2] The Parties agree that Defendant was not actually on parole but was on supervised release. Though the terms are often used interchangeably, there are key differences between the two systems. *See generally*, Jacob Schuman, *Supervised Release Is Not Parole*, 53 Loy. L.A. L. Rev. 587, 643 (2020) (arguing there are "three key differences between parole and supervised release: their method of imposition (relief/penalty), their theory of punishment (rehabilitative/punitive), and their governing institutions (agency/courts).").

No. 18 at PageID.45. Three weeks later, Defendant was indicted for possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). ECF No. 1.

On May 31, 2023, Defendant filed a motion to suppress all evidence seized from the Equinox, arguing his consent was coerced "because the trooper told him [the search] was a condition of his release." ECF No. 18 at PageID.49. Three weeks later, he filed another Motion to Suppress, this time arguing that the traffic stop itself was unlawful because he did not violate the traffic laws the Troopers said he did, so any fruits of the stop must be suppressed. ECF No. 30.

The Government opposes both motions by asserting Defendant lacks standing to challenge the search or seizure. ECF No. 21 at PageID.60–61. And, the Government argues, even if Defendant has standing, the officers had probable cause to initiate the stop and Defendant consented to the search. *See* ECF Nos. 21 at PageID.61–64; 34 at PageID.99–100.

## II.

### A.

Defendants may bring motions to suppress evidence only if their own Fourth Amendment rights were violated. *Alderman v. United States,* 394 U.S. 165, 171–72 (1969); *see also United States v. Payner*, 447 U.S. 727, 731–32 (1980) (finding defendant did not have standing to suppress evidence where the IRS violated a bank agent's Fourth Amendment rights but not the defendant's). To have standing, a defendant must demonstrate "a legitimate expectation of privacy in the area searched or items seized." *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013). Whether a legitimate expectation of privacy exists is determined based on the totality of the circumstances. *Jones v. Lewis*, 874 F.2d 1125, 1131–32 (6th Cir. 1989). Courts determine whether a legitimate expectation of privacy exists in a particular place or thing on a case-by-case basis. *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005).

**B.**

Defendant lawfully possessed the Equinox at the time it was stopped and had a legitimate expectation of privacy in it such that he has Fourth Amendment standing to challenge the search. Not only was Defendant an insured driver of the car, ECF No. 25 at PageID.74, but Defendant also testified that he had paid his niece[3] to purchase the car from her after she moved to Texas in November 2022, but the Equinox's title had not yet been officially transferred to him.

The Government asserts Defendant had no expectation of privacy in the Equinox because he was "not the registered owner." ECF No. 21 at PageID.60. But considering the facts in totality, Defendant—who was lawfully driving a car insured in his name—had a legitimate expectation of privacy within that car, even if it was not yet titled in his name. *See Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (noting lawful possession or control of property usually leads to a legitimate expectation of privacy)). Thus, Defendant has standing to challenge the search of the Equinox, so his suppression arguments will be addressed.

**III.**

**A.**

The Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant based on probable cause. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Yet, an exception to the Fourth Amendment's warrant requirement applies when valid consent is provided. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).

Consent is valid "only if it is given freely and voluntarily." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004). Consent may not "be coerced, by explicit or implicit means, by

---

[3] Defendant's reply brief states the Equinox was registered to Defendant's sister. *See generally* ECF No. 24. It was clarified at the suppression hearing that it was not Defendant's sister, but his niece.

implied threat, or covert force." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). Whether consent is valid "is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227. "Factors to consider include 'the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police.'" *United States v. Justice*, 464 F. App'x 448, 452 (6th Cir. 2012) (quoting *United States v. Worley*, 193 F.3d 380, 386 (6th Cir.1999)).

Importantly though, if consent is given after an illegal seizure,[4] "evidence obtained pursuant to the consent to search must be suppressed, unless the consent is sufficiently attenuated from the illegal seizure such that the consent is the product of an intervening act of free will." *United States v. Lopez-Arias*, 344 F.3d 623, 629 (6th Cir. 2003).

**B.**

Defendant makes two arguments to suppress the drugs found in his engine. First, he argues that there was not probable cause for the stop, so any evidence obtained during the stop must be suppressed, even if he consented to the search during the illegal stop. ECF No. 30. Second, even if there was probable cause for the stop, Defendant argues for suppression because his consent was coerced by Rubio's reference to Defendant's "parole conditions." ECF No. 18. Both arguments will be addressed in turn.

The troopers had probable cause to stop Defendant. Although the troopers' bodycams did not record the alleged traffic violations, *see generally* Rubio Cam; Defs.' Resp. Ex. 2, ECF No. 28 [Curry Cam], both troopers testified at the hearing that they observed two traffic violations before

---

[4] "Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009)).

stopping Defendant. Curry testified that Defendant turned left but entered the far-right lane, and then was unable to stay in a single lane. Rubio testified that they followed Defendant for several blocks after observing Defendant's "improper lane use" and then checked the Equinox's license plate in the Law Enforcement Information Network. Rubio further testified that after running the Equinox's plate, the database showed the registered owner of the Equinox was a woman, which accords with Defendant's testimony during the hearing and the troopers' statements on the body camera footage referring to the driver of the Equinox as a woman. *See* Rubio Cam, at PageID.81; 1:03–1:08. The troopers' body camera footage shows that troopers continued following the Equinox after running its plate, at which point Rubio says, "She crossed. She's still staying on it," and a few seconds later, Curry says, "they're still in the middle of the road."  These statements suggest that the driver of the Equinox—who troopers believed at the time to be a woman—crossed lanes again. *See* Rubio Cam at 0:01–0:14; Curry Cam at 0:01–0:14. The troopers' credible testimony regarding Defendant's driving before initiating the stop, coupled with the audio evidence that they observed the Equinox straddling two lanes demonstrates the officers had probable cause to stop Defendant for at least one Michigan traffic violation. *See* MICH. COMP. L. 257.642(1)(a) ("A vehicle must be driven as nearly as practicable entirely within a single lane"). Thus, Defendant's Motion to Suppress challenging the legality of the stop itself, ECF No. 30, will be denied. But because there was probable cause for the stop, Defendant's consent must also be addressed.

Regarding Defendant's consent to the search of the Equinox, it is undisputed that Defendant told the troopers they could "go through" his car. Rubio Cam at 4:16–4:18. And considering the totality of the circumstances, this Court finds that Defendant's consent was voluntary.

Defendant argues he was "coerced" into consenting to the search "because the trooper told him [the search] was a condition of his release." ECF No. 18 at PageID.49. But Rubio did not tell Defendant consenting to the search was a condition of his parole conditions. Rubio merely referenced Defendant's parole conditions before asking if Defendant would consent to a search of the car. *See* Rubio Cam at 2:44–2:45. ("Your parole conditions, if I asked you to search the car, would you let me?")

Rubio's mere passing reference to Defendant's "parole conditions" when asking for his consent was not coercive under the circumstances. Importantly, the troopers asked for Defendant's consent *a second time*, absent any mention of possible parole conditions, and Defendant *again consented*. *See* Rubio Cam at 4:06–4:18. This second request for consent to search the Equinox came *three minutes* after Defendant's initial consent and gave Defendant the opportunity to narrow the scope of his earlier consent or revoke it altogether. Asking Defendant to verify that he did consent is not the kind of situation that causes someone to believe he has no ability to decline. *See United States v. Marshall*, No. 3:18-CR-76, 2019 WL 1090709, at *5 (S.D. Ohio Mar. 8, 2019) (noting consent is not voluntarily given if defendant "believes that any resistance to the officers' authority would be futile") (citing *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999)).

Moreover, the entire interaction lasted only four minutes, during which time troopers were clear that Defendant was "not going in handcuffs." Rubio Cam at 2:49–3:01. Defendant asserts he was "allegedly shaking" when he could not locate proof of his car insurance on his phone, ECF No. 18 at PageID.45; *see also* Rubio Cam at 2:15–2:25. Maybe so. But when Rubio asked for Defendant's consent a second time, and Defendant told the troopers they could "go through" the Equinox, his speech was confident and cooperative. Rubio Cam at 4:06–4:18; *see also Gale v. O'Donohue*, 824 F. App'x 304, 319 (6th Cir. 2020) (finding a defendant's tone of voice in

- 7 -

consenting suggested his consent was voluntary); *see also United States v. Herrera*, 733 F. App'x 821, 825 (6th Cir. 2018) (considering a defendant's "tone of voice" to conclude that defendant's voice "conveyed voluntary consent to [a] search, rather than mere acquiescence"). And there is nothing in the record to suggest that Defendant lacked the education or knowledge to consent.

In sum, considering the totality of the circumstances, Defendant's consent was voluntary. Thus, his Motion to Suppress challenging the voluntariness of his consent, ECF No. 18, will also be denied. And because both Defendant's Motions will be denied, the evidence will not be suppressed.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress Evidence, ECF No. 18, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion to Suppress for Unlawful Stop, ECF No. 30, is **DENIED**.

**This is not a final order and does not close the above-captioned case**.

Dated: August 22, 2023                              s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge